Ismail Amin, Esq. Bar No. 231232
John A. Gladych, Esq., Bar No. 139254
TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Telephone: (949) 502-7715
Email: jgladych@talglaw.com

Attorneys for Plaintiff, MIDSTATE BARRIER, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIDSTATE BARRIER, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; OHLA USA, INC. formerly known as OHL USA, INC., and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 24-cv-01224-NC<br><br>**FIRST AMENDED COMPLAINT [CLASS ACTION]**<br><br>**DEMAND FOR JURY TRIAL** |

This is an action to enforce claims against a public works payment bond. Plaintiff Midstate Barrier, Inc., a California corporation ("Plaintiff"), individually, for itself and on behalf of all others similarly situated alleges as follows:

1. Plaintiff is, and was at all relevant times, a California corporation in good standing, authorized to do business and doing business in the State of California engaged in public works construction. Plaintiff maintains its principal place of business in the City of Stockton, State of California.

2.	Plaintiff was duly always licensed in the proper classification of contractors during the performance of the acts which are the subject of this action in accordance with California Business & Professions Code Section 7031 holding California Contractors State License No. 529261.

3.	Plaintiff is informed and believes and thereon alleges that non-party State of California Department of Transportation ("Caltrans") was, a public entity and is the owner or reputed owner of a certain work of improvement generally known PAVEMENT REHABILITATION, SEISMIC IN MONTEREY COUNTY, IN AND NEAR KING CITY FROM 0.4 MILES SOUTH OF WILD HORSE ROAD OC TO TEAGUE AVENUE 2MON0101R0369 0477 Project No. 05-1F75U4 ("Project") situated in the County of Monterey, State of California. Caltrans entered a public works prime contract with Defendant OHLA USA, INC. formerly known as OHL USA, INC. ("OHL") to complete the Project.

4.	Plaintiff is informed and believes and thereon alleges that Defendant OHL (who is being sued in its capacity as the named "Principal" on the statutory public works payment bond that is the subject of this action pursuant to California Code of Civil Procedure Section 996.410), is and was a Delaware corporation authorized to conduct business, and conducted business, as a prime contractor on public works projects in the State of California, County of Monterey. Defendant OHL is duly licensed with the California Contractors State License No. 984140.

5.	Plaintiff is informed and believes, and based thereon alleges, that Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is a corporation organized and existing under the laws of the State of Massachusetts, and at all relevant times was, authorized to do and doing business in the State of California as construction bond surety, and is, and at all times mentioned herein was, the surety on a statutory payment bond, bearing Bond No. 015205894 ("Payment Bond") issued on the Project. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that the Payment Bond was accepted by Caltrans, made, issued, and executed as aforesaid in accordance with the provisions of Part 6, Title 3, Chapter 5, Sections 9550 through 9566, inclusive, of the California Civil Code.   California Code, Civil Code - CIV § 9554. [A true and accurate copy of the Payment Bond is attached and incorporated herein as **Exhibit 1**.]

**FEDERAL JURISDICTION/ VENUE**

6. Plaintiff originally filed this action in Superior Court for the State of California for the County of Monterey due to the fact that the Project at issue is located within the County of Monterey, but Defendants requested and obtained removal to this Court pursuant to 28 U.S.C. sections 1441 and 1446, asserting original federal jurisdiction on the basis of diversity under 28 U.S.C. section 1332(a)(1).

7. Pursuant to the prime contract that Caltrans entered with Defendant OHL, and pursuant to Public Contract Code Section 10261, Caltrans made monthly progress payments to Defendant OHL based on estimates made and approved by Caltrans. Said monthly estimates and said monthly progress payments included amounts of money Caltrans allowed on account of the work performed by Defendant OHL's subcontractors. Public Contract Code Section 10262 required that Defendant OHL "shall pay to his or her subcontractors, within seven days of receipt of each progress payment, the respective amounts allowed the contractor on account of the work performed by his or her subcontractors, to the extent of each subcontractor's interest therein. The payments to subcontractors shall be based on estimates made pursuant to Section 10261."

8. Public Contract Code Section 10262.5 subdivision (a) states in pertinent part: "Notwithstanding any other law, a prime contractor or subcontractor shall pay to any subcontractor, not later than seven days after receipt of each progress payment, the respective amounts allowed the contractor on account of the work performed by the subcontractors, to the extent of each subcontractor's interest therein. In the event that there is a good faith dispute over all or any portion of the amount due on a progress payment from the prime contractor or subcontractor to a subcontractor, then the prime contractor or subcontractor may withhold no more than 150 percent of the disputed amount. Any contractor who violates this section shall pay to the subcontractor a penalty of 2 percent of the amount due per month for every month that payment is not made.

9. Plaintiff is informed and believes that the Project is complete and has been accepted by Caltrans on December 19, 2023, but that the time for bring actions against the statutory payment bond has not yet expired. Attached as **Exhibit 2** and incorporated herein. is a true and accurate copy of the Caltrans "Major Construction Payment & Information" page last updated April 16, 2024, from

the official Caltrans website that it is required to publish under California Public Contract Code Section 10261.7.  **Exhibit 2** shows the numerous monthly progress payments made by Caltrans to Defendant OHL and shows the currently 70 stop payment notices that were filed with Caltrans primarily due to Defendant OHL's failure to make timely progress payments to subcontractors and suppliers.

10. The Payment Bond lists Defendant OHL as the "Principal" who was "required to furnish a bond in connection with the [Project], to secure the payment of claims of laborers, mechanics, materialmen and other persons as provided by law." The Payment Bond further states in pertinent part: "[t]hat if the Principal or its subcontractors shall fail to pay any of the persons named in Civil Code Section 9100…with respect to such work and labor, that the surety herein will pay for the same in an amount not exceeding the sum specified in this bond…The bond shall inure to the benefit of any of the persons named in Civil Code Section 9100 as to give a right of action to such persons or their assigns in any suit brought upon this bond."

11. California Civil Code Section 9554 was incorporated by law into the terms of the Payment Bond and provides in pertinent part: "(a) A payment bond shall be in an amount not less than 100 percent of the total amount payable pursuant to the public works contract …(b) The payment bond shall provide that if the direct contractor or a subcontractor fails to pay any of the following, the surety will pay the obligation and, if an action is brought to enforce the liability on the bond, a reasonable attorney's fee, to be fixed by the court: (1) A person authorized under Section 9100 to assert a claim against a payment bond…(c) The payment bond shall be conditioned for the payment in full of the claims of all claimants and by its terms inure to the benefit of any person authorized under Section 9100 to assert a claim against a payment bond so as to give a right of action to that person or that person's assigns in an action to enforce the liability on the bond."

12. California Civil Code Section 9558 provides: "A claimant may commence an action to enforce the liability on the bond at any time after the claimant ceases to provide work, but not later than six months after the period in which a stop payment notice may be given under Section 9356."

13. California Civil Code Section 9356 provides: "A stop payment notice is not effective

FIRST AMENDED CLASS ACTION COMPLAINT
- 4 -

unless given before the expiration of whichever of the following time periods is applicable: (a) If a notice of completion, acceptance, or cessation is recorded, 30 days after that recordation. (b) If a notice of completion, acceptance, or cessation is not recorded, 90 days after cessation or completion."

14. Plaintiff, and all other similarly situated subcontractors to Defendant OHL, was/were and is/are person(s) authorized under California Civil Code Section 9100 to assert a claim against the Payment Bond having been a subcontractor to Defendant OHL on the Project who provided labor materials and services to the Project. In keeping with the terms of both the prime contract and California law, Caltrans issued monthly progress payments to Defendant OHL that included amounts of money that Caltrans determined was due on account of the work Plaintiff, and other similarly situated subcontractors to Defendant OHL, performed.

15. Due to Defendant OHL's repeated violations of Public Contract Code Section 10262.5(a) arising from Defendant OHL's failure to timely pay to Plaintiff, and all other similarly situated subcontractors to Defendant OHL, within seven days of Defendant OHL's receipt of progress payments Caltrans authorized and made to Defendant OHL on account of the work Plaintiff, and all other similarly situated subcontractors to Defendant OHL, performed as shown on Caltrans' monthly estimates, Plaintiff, and all other similarly situated subcontractors to Defendant OHL, became vested with a claim against Defendant OHL for both the unpaid payments and for the 2% per month interest penalty.

16. Despite repeated demands by Plaintiff to Defendant OHL to pay both the multiple unpaid progress payments wrongfully withheld, and all accrued 2% per month interest penalties, Defendant OHL has to date only paid Plaintiff the wrongfully withheld progress payments in principal but has failed to pay Plaintiff's vested accrued claim for the 2% per month interest penalties due. Attached as **Exhibit 3** is a spreadsheet that details the accrual of Plaintiff's claim for the 2% per month interest penalties remaining unpaid due to Defendant OHL's default in the payment of the same. The total principal sum of Plaintiff's claim for the 2% interest penalties due is $40,743.26. Plaintiff has demanded that this claim be paid by Defendant Liberty Mutual as the surety on the Payment Bond due to the default of the Payment Bond principal, Defendant OHL.

Plaintiff is informed and believes that Defendant OHL similarly failed to pay its other subcontractors their accrued vested claims for their 2% per month interest penalties.

17. California case law is clear that the statutory payment bond surety, in this case Defendant Liberty Mutual, is legally obligated to pay Plaintiff's claim for the 2% interest penalty the event its principal fails to do so. See, *Washington International Insurance Co, v. Superior Court* (1998) 62 Cal.App.4th 981, 991. Further, California case law recognizes that the premiums on surety bonds are calculated based on individual contract factors such as the financial stability of the principal, the size of the obligation being guaranteed, and the likelihood of default. Thus, in calculating the premium for a payment bond on a public works project, a surety can take into account, as one of these factors, that it may be called upon to honor the contractor's obligation to pay not only the subcontract price, but an additional 2 percent per month interest penalty as damages for failure to make timely payment. The surety, as one in the business of calculating such risks and determining an appropriate price for undertaking them, is in a better position to extract payment for taking on this risk before issuing the payment bond than is the subcontractor to protect itself from the contractor's failure to make timely payments. California case law interpreting section 10262.5 as requiring the surety to pay the 2 percent per month interest penalty if the contractor does not do so (as opposed to an interpretation which would leave the subcontractor to bear alone the economic consequences of delayed payments), is in keeping with the general principle that risks should be borne by those best able to spread them out over the economy. See, *Washington International Insurance Co, v. Superior Court*, supra, at page 990.

18. California courts also have noted that the "interest penalty" appears to be more in the nature of reimbursement to the subcontractor for the value of the loss of the use of progress payments than in the nature of a fine or penalty against the contractor, and to be designed to coerce prompt payment rather than to punish delay. Rather than fixing a flat fine or fee for delayed payment, the California Legislature defined the penalty for late payment in terms of interest directly tied to the total amount of wrongfully withheld moneys and the total amount of time such moneys are withheld. Thus, the amount of "penalty" to be paid by the wrongdoer is entirely within his or her control, a hallmark of coercion rather than punishment, as well as of an intent to make the victim of

such wrongdoing whole, rather than to punish the wrongdoer. In other words, "extra" or "penalty" interest may be a form of precalculated economic damages for depriving another of the use of money which the other would have had a right to use. (See, e.g., *Walton v. Eu* (1983) 143 Cal. App. 3d 403, 405 [referring to "interest penalty" for early withdrawal of investment certificates]; *Hrimnak v. Watkins* (1995) 38 Cal. App. 4th 964, 979 [referring to the prejudgment "interest penalty" owed under Code of Civil Procedure section 998 and Civil Code section 3291 if a judgment is larger than the amount of a rejected settlement offer].) It is well established that sureties can be held liable to pay such sums. "As stated in *Lawrence Tractor Co. v. Carlisle Ins. Co.* (1988) 202 Cal. App. 3d 949, 955, interest is an element of the damages caused by the principal's conduct, for which the surety cannot be held in excess of the amount of its bond." (*Harris v. Northwestern Nat. Ins. Co.* (1992) 6 Cal. App. 4th 1061, 1067.

19.   This class action is brought to rectify Defendants from continuing to blatantly and constantly violate California's prompt payment statutes that specifically mandate that statutory payment bond sureties like Defendant Liberty Mutual and direct/prime contractors like Defendant OHL to pay subcontractors like Plaintiff a 2% interest penalty per month for every month that any undisputedly due progress payment is not made within seven (7) days of the prime contractor's receipt of progress payments, absent a good faith or bona fide dispute over the actual payment. As alleged above, California Courts have specifically noted that the 2% interest "penalty" is more in the nature of reimbursement to the subcontractor for the value of the loss of use of progress payments than in the nature of a fine or penalty.

20.   Plaintiff and all such other impacted subcontractors on the Project have a direct claim against Defendant Liberty Mutual under the Payment Bond for all accrued, but unpaid 2% interest penalty claims. Demand to pay all accrued unpaid 2% interest penalty claims have been made to both Defendants OHL and Liberty Mutual, who have failed to meaningfully respond to such demand. This action seeks only the payment of all such accrued, yet unpaid 2% interest penalty claims due Plaintiff and each similarly situated late paid subcontractor who has already been paid all other amounts due.

21.     The class likely comprises no less than 15-30 subcontractors such that joinder of all class members is impractical, and the disposition of the claims in a Class Action will benefit the parties and the Court. The proposed class will exclude those subcontractors who have other pending claims for unpaid sums and not just unpaid accrued vested claims for the 2% interest penalties. As such, all the penalties due the many subcontractors depend on essentially the same set of facts and involve the same California prompt payment statutes. [As a frame of reference, Caltrans official website shows that at least 70 Stop Payment Notices were received seeking to collect past due payments totaling in the aggregate of tens of millions of dollars. Stop payment notices are typically only filed after progress payments that should have been timely made from the prime/direct contractor to a subcontractor have not been made.] Plaintiff was one of the subcontractors who was forced to serve multiple stop payment notices on the Project, and who eventually belatedly received payments, but such late payments were made without the accrued mandatory 2% interest penalties. Plaintiff is informed and believes that the failure to include accrued late payment penalties was an established pattern and practice by Defendant OHL on this project and that Defendant Liberty Mutual has a pattern and practice of not promptly paying subcontractors' rightful 2% interest penalty claims.

22.     Because the scope of this class action includes only one, albeit large ($82-plus million) public work Project in which Defendant OHL was the direct/prime contractor, identification of the universe of potential class members is uniquely within Defendant OHL's knowledge and the identity of every unlawfully late paid subcontractor can be readily found in mandatory records that Defendant OHL must by law keep. Because the monthly progress payment estimates made by Caltrans and the date and extent of the payments from Caltrans to Defendant OHL are matters of public record, the determination of when Defendant OHL received and how much Defendant OHL received in each progress payment on account of the labor, material, service and work of its subcontractors and suppliers can be readily determined. Defendant OHL's own project accounting system will be able to readily show when each progress payments were made to Plaintiff and to all putative class members.

23. The questions of law and fact common to the class have the capacity to generate common answers that will drive resolution of this action. Common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant OHL defaulted in its obligation to pay class members accrued claims for 2% interest penalties; and

    b. Whether Defendant Liberty Mutual failed to pay class members their accrued but unpaid claims for the 2% per month interest penalties.

24. Plaintiff's claims, and Defendants' defenses thereto, are typical of the claims of the class in that Plaintiff has supplied materials, and performed work as a public works subcontractor to Defendant OHL who Plaintiff alleges treated nearly all subcontractors and suppliers on this public works Project the same in that Defendant OHL typically and routinely paid undisputed progress and that it received from Caltrans on account of the work, labor, materials, and/or services well beyond the statutorily mandated seven-day period without also paying the 2% per month interest penalty due. The only real difference in the class members claims will be the number of days they were each paid late, and the amounts wrongfully paid late. Plaintiff is informed and believes that it is most likely that Defendant OHL and Defendant Liberty Mutual will be unable to show that they have ever fully complied with California's prompt payment statutes on this public works Project as to any of its subcontractors.

25. Defendant Liberty Mutual has an independent statutory and legal obligation to pay Plaintiff and all class members the accrued, but unpaid 2% penalties that Defendant OHL has failed to pay. See, *Washington International Insurance Co, v. Superior Court* (1998) 62 Cal.App.4th 981, 991 and *Liton Gen. Engineering v. United Pacific Insurance* (1993) 16 Cal.App. 4th 577. All such accrued but unpaid statutory penalties became due under the Payment Bond when Defendant OHL defaulted by not paying the accrued penalties when wrongfully late progress payments were made, virtually every single month the Project progressed until completion. Plaintiff again hereby demands that Defendant Liberty Mutual promptly pay all vested claims for the 2% per month interest penalties the Payment Bond Principal Defendant OHL has failed to pay.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Midstate Barrier, Inc., a California corporation for itself and on behalf of all others similarly situated members of the class, requests that this Court award relief against Defendant OHL as Principal and Defendant Liberty Mutual as the Surety on the Payment Bond as follows:

a. An order certifying the class and designating Plaintiff as the Class Representative and its counsel as Class Counsel;

b. Awarding Plaintiff and/or the proposed Class members, if certified, all claims for unpaid 2% per month interest penalties due under the Payment Bond ;

c. Awarding attorney's fees under the terms of the Payment Bond and pursuant to statute;

d. Costs, and prejudgment interest as allowed by law; and

e. For such other and further relief as the Court may deem necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Midstate Barrier, Inc., a California corporation, hereby demands that this matter be tried before a jury.

Dated:    April 17, 2024              TALG, LTD.

By: _____
John A. Gladych, Esq.
Attorneys for Plaintiff
Midstate Barrier, Inc.

# **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on April 17, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing documents via the Court's CM/ECF system.

  Executed on April 17, 2024 at Irvine, California.


              ___/s/ *John A. Gladych*_____
              JOHN A. GLADYCH